**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 25-55-CJS**

**MICHELLE HAGANS** **PLAINTIFF**

**v.** **MEMORANDUM OPINION AND ORDER**

**FRANK BISIGNANO, Commissioner**[1]
**Social Security Administration** **DEFENDANT**

* * * * * * * * * * * *

Plaintiff Michelle Hagans brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's final decision denying her application for Social Security Disability Insurance under Title II of the Social Security Act. (*See* R. 1). The parties have consented to the undersigned's authority to adjudicate this action pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* R. 12). At issue is whether Hagans's residual functional capacity was supported by substantial evidence. For the reasons set forth herein, the Court will **affirm** the Commissioner's decision.

## I. STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an administrative law judge ("ALJ") in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" but less than a preponderance; it is "such relevant

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano is substituted for Martin O'Malley as Defendant in this case.

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A reviewing court may "not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Court must affirm the Commissioner's decision if it is supported by substantial evidence, "[e]ven if the evidence could also support another conclusion." *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)).

To qualify for benefits, a claimant must establish that she is disabled within the meaning of the Social Security Act ("Act"). 42 U.S.C. §§ 423, *et seq.* The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act requires the Commissioner to follow a five-step analysis when evaluating a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803 (6th Cir. 2008) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)).

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. [*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)] (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c) (2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that

> is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d) (2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston*, 245 F.3d at 534.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Hagans was 47 years old at the time of the January 22, 2013, alleged onset date, and 58 years old at the time of the ALJ's November 17, 2023, decision. (*See* Administrative Record ("A.R.") at 28, 136–37). Hagans has past work experience as a client service manager, a plan controller, a problem resolution associate, a premium 401k representative, and a representative. (*Id.* at 148). She alleges disability due to degenerated discs of the upper and lower spine, chronic pain syndrome, fibromyalgia, trichotillomania, movement disorder, defecation syncope, Tourette syndrome, IBS, osteoarthritis, anxiety, depression, chronic fatigue syndrome, circadian rhythm sleep disorder, obstructive sleep apnea, delayed sleep phase type disorder, chronic insomnia, attention deficit and hyperactivity disorder ("ADHD"), carpel tunnel, chronic dry eye syndrome, restless leg syndrome, bipolar disorder, tendinitis, tardive dyskinesia, and bursitis. (*Id.* at 136–37).

On June 23, 2017, Hagans filed an application for disability insurance. (*See id.* at 199). At that time, she alleged an onset date of January 13, 2012. (*Id.*). Her application was initially denied on January 2, 2018 (*id.* at 214) and again denied after reconsideration on July 13, 2018 (*id.* at 232). Thereafter Hagans requested an administrative hearing (*see id.* at 134), but after concluding the request was untimely, ALJ Kenneth Wilson dismissed her request on November 21, 2018 (*id.* at 135). Hagans did not appeal the decision.

On January 2, 2020, Hagans filed another application for disability insurance. (*See id.* at 136). Specifically, she alleged disability between her onset date, January 22, 2013 and her date last insured, December 31, 2017. (*Id.*). Her subsequent application was also denied on July 20, 2020, (*id.* at 149) and after reconsideration on January 4, 2021, denied once more (*id.* at 175–76). After requesting a hearing, Hagans appeared and testified at an administrative hearing before ALJ Christopher Tindale on May 24, 2021. (*Id.* at 103–122, 182). The ALJ also heard testimony from an impartial vocational expert ("VE"). (*Id.* at 122–129, 182). The ALJ then issued a decision on June 9, 2021, finding Hagans was not disabled under the Act because the July 13, 2018, determination was final and binding. (*Id.* at 185). Hagans then appealed the decision to the Appeals Council. (*See id.* at 192). On December 2, 2021, the Appeals Council reversed the ALJ's decision and remanded the case to the ALJ to consider whether her subsequent application was barred by res judicata. (*Id.* at 194–95).

On remand, the ALJ held a further administrative hearing on January 11, 2023 (*see id.* at 73, 76), wherein the ALJ heard argument as to whether the subsequent application was barred by res judicata (*id.* at 77) and heard testimony from Hagans and a VE (*id.* at 78–96). Upon request, the ALJ held a supplemental hearing on August 30, 2023. (*Id.* at 28, 60, 63). At that hearing, the ALJ heard testimony from a VE once more. (*Id.* at 66–71). The ALJ then entered another written decision on November 17, 2023, finding that although the second application was not barred by res judicata, Hagans was not disabled under the Act and therefore not entitled to benefits. (*See id.* at 28–48).

The ALJ applied the five-step sequential process to determine that Hagans was not disabled. (*Id.* 31–46); *see also* 20 C.F.R. § 404.1520(a)(4). The ALJ determined at Step One that, based on her tax filings, Hagans had not engaged in substantial gainful activity since her alleged

onset date of January 22, 2013. (A.R. at 32 (citing 20 C.F.R. § 404.1471, *et seq*.)). At Step Two, the ALJ found that Hagans suffered from severe impairments, namely, disorders of the cervical and lumbar spine, fibromyalgia, a right knee disorder, obesity, ADHD, an anxiety disorder, and a depressive disorder. (*Id.* (citing 20 C.F.R. § 404.1520(c))). The ALJ next concluded, at Step Three, that Hagans did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at 34 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526)).

The ALJ then determined Hagans had the residual functional capacity ("RFC") "to perform light work" with the following limitations:

> The claimant was limited to occasionally climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds. The claimant could frequently balance as defined by the Selected Characteristics of Occupations (SCO) and stoop, while she could occasionally kneel and crouch, and never crawl. The claimant had to avoid concentrated exposure to heavy, whole body vibration, such as a jackhammer. The claimant had to avoid all exposure to dangerous hazards, such as unprotected heights and dangerous machinery that has moving mechanical parts. The claimant was limited to frequent handling and fingering. The claimant was limited to occasional overhead reaching. The claimant was able to understand and remember simple and detailed instructions and procedures. The claimant was able to sustain attention, concentration, and pace for simple tasks within regular tolerances, including two-hour time blocks. The claimant was able to interact with peers and supervisors sufficiently for task completion and on an occasional basis with the public. The claimant was able to adapt to work demands and situational changes given *reasonable support*.

(*Id.* at 37 (emphasis added)). In evaluating Hagans's mental RFC, the ALJ reviewed medical evidence, non-medical evidence, and the medical opinions of Mary K. Thompson, Ph.D., Tonya Gonzalez, Psy.D., and Neha Gupta, M.D. (*Id.* at 41–43, 45–46). The ALJ found the reports of Dr. Thompson and Dr. Gonzalez persuasive because their opinions were based on evidence from the relevant time and supported by the record. (*Id.* at 45–46). However, the ALJ found Dr. Gupta's opinion unpersuasive because it was based entirely on her own examinations of Hagans, which took place outside the relevant period. (*Id.*). It is also important to note that Dr. Thompson and

Dr. Gonzalez both opined that Hagans was capable of "*adapt[ing] to work demands and situational changes given reasonable support*." (*Id.* at 147, 173 (emphasis added)).

At Step Four, the ALJ found that Hagans was incapable of performing past relevant work. (*Id.* at 46 (citing 20 C.F.R. § 404.1565)). The ALJ next concluded, at Step Five, that based on Hagans's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Hagans could have performed. (*Id.* at 47 (citing 20 C.F.R. §§ 404.1569 and 404.1569a)). Therefore, the ALJ concluded that Hagans had not been disabled, as defined in the Act, from January 22, 2013 through December 31, 2017, the date last insured. (*Id.* at 48 (citing 20 C.F.R. § 404.1520(g)).

On December 19, 2024, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review. (*See id.* at 12–17). On March 11, 2025, Hagans was granted an additional 30 days to file a civil action appealing the Commissioner's decision. (*Id.* at 10–11). Hagans exercised that option on April 9, 2025, when she filed the instant action seeking judicial review under 42 U.S.C. § 405(g). (*See* R. 1). The Commissioner subsequently filed his Answer and a certified Transcript of the Administrative Proceedings. (R. 8). Hagans and the Commissioner have since filed their briefs on the matter. (R. 9; R. 13; R. 14).

## III. ANALYSIS

The only issue presented by Hagans is whether the ALJ properly assessed the residual functional capacity ("RFC"). (R. 9). Hagans argues that the ALJ did not. (*Id.*). The Commissioner argues that the ALJ's evaluation of Hagans's RFC was supported by substantial evidence. (R. 13). Hagans replies to the Commissioner's arguments. (R. 14).

An RFC "is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155

(6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). "It is an assessment of what [a claimant] can and cannot do, not what she does and does not suffer from." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). ALJs are "charged with the responsibility of determining the RFC based on" all the evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Hagans argues her mental RFC was not supported by substantial evidence because the ALJ did not define the term "reasonable support." (R. 9). She contends that without defining that term, "it is unclear whether the vocational expert's testimony accurately accounted for Plaintiff's adaptation limitations." (*Id.* at Page ID 5892).

Unlike an RFC, "hypothetical question[s] posed to a VE . . . should be a more complete assessment of [the claimant's] physical and mental state and should include an 'accurate[] portray[al] [of her] individual physical and mental impairment[s].'" *Howard*, 276 F.3d at 239 (quoting *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d, 777, 779 (6th Cir. 1987)). This is not to say the hypothetical must list the claimant's medical conditions. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Rather, a hypothetical question must contain a "claimant's 'residual functional capacity and . . . age, education, and work experience.'" *See id.* (quoting 20 C.F.R. § 416.920(a)(4)(V)). This question must be supported by "some evidence in the record." *See Hardaway v. Sec'y of Health & Hum. Servs.*, 823 F.2d 922, 927–28 (6th Cir. 1987) ("An ALJ may ask a vocational expert hypothetical questions, provided the question is supported by evidence in the record."). In turn, a VE's "testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she 'can and cannot do,' there exist a significant number of employment opportunities for her in the regional and national economies." *Webb*, 368 F.3d at 633.

At Hagans's hearing, the ALJ asked a hypothetical that aligned with the above standard. He posed, in relevant part, the following hypothetical:

> I'd like you to assume a person of the claimant's age, education, and work experience who is limited to light work. However, this individual [is] only . . . [a]ble to understand and remember simple and detailed instructions and procedures, able to sustain attention, concentration, and pace for simple tasks within regular tolerances including two-hour time blocks, able to interact with peers and supervisors sufficiently for task completion and on an occasional basis with the public[, a]nd able to adapt to work demands and situational changes given reasonable support.

(A.R. at 66–67). The vocational expert testified that based on those characteristics, multiple jobs existed within the national economy that the hypothetical person could work. (*Id.* at 67–68). This testimony was based on the Dictionary of Occupational Titles and the vocational expert's training, education, and observation of the job market. (*Id.* at 70). As such, the vocational expert's testimony was proper. *See Webb*, 368 F.3d at 633.

The mental RFC itself was also properly supported. In evaluating Hagans's mental RFC, the ALJ primarily relied on the medical opinions of Mary K. Thompson, Ph.D. and Tonya Gonzalez, Psy.D., psychologist consultants of the state agency. (*Id.* at 45–46). The ALJ credited their opinions as somewhat persuasive because their medical opinions were based on "reports, activities, and medical evidence" available during their respective assessments of Hagans. (*Id.* at 46). The ALJ also found their opinions were corroborated by the administrative record. (*Id.*). Notably, both psychologists opined that Hagans was capable of "adapt[ing] to work demands and situational changes given reasonable support." (*Id.* at 147, 173).

The ALJ also considered the medical opinion of Neha Gupta, M.D., Hagans's treating psychiatrist. (*Id.* at 46). However, the ALJ found Dr. Gupta's medical opinion unpersuasive because her opinion was based exclusively on her own examinations and she did not begin treating Hagans until around a year-and-a-half after her date last insured. (*Id.*). Therefore, the ALJ

concluded Dr. Gupta's findings were "not representative of [Hagans]'s functioning during the relevant period." (*Id.*). Moreover, the ALJ indicated that her medical findings were not entirely consistent with medical records. (*Id.*). In assessing Hagans's mental RFC, the ALJ also considered medical records and non-medical evidence, like day-to-day activities that appeared throughout the record. (*Id.* at 41–43). As such, Hagans's mental RFC was appropriately supported. *See Rudd*, 531, F. App'x at 728.

Nonetheless, Hagans argues that because the ALJ did not specify what he meant by "reasonable support," that portion of Hagan's RFC is inaccurate and vague. (R. 9 at Page ID 5892). Specifically, she argues that some courts have held that "reasonable support" means occasional changes that are gradually introduced. (*Id.*). In support of this position, Hagans cites *Moulden v. Kijakazi*, No. 1:20-CV-182-HBB, 2022 WL 178588, at *8–9 (W.D. Ky. Jan. 19, 2022). However, Hagans misreads *Moulden*.

In *Moulden*, the claimant challenged the ALJ's hypothetical because it was different than the RFC. *Id.* at *8. The RFC provided the claimant could "adapt to situational change and recognize hazards in workplace given reasonable support," while the hypothetical question posed was "this person could adapt to occasional workplace changes that were gradually introduced." *Id.* Based on this discrepancy, the claimant argues the question was inconsistent and the VE's testimony could not provide substantial evidence. *Id.* The court upheld the Commissioner's decision because, although the hypothetical question did not mirror the RFC, it provided specific examples of what the RFC meant. *Id.* at *9. In other words, the hypothetical was more specific than the RFC, *id.*, not that "reasonable support" means occasional changes that are gradually introduced. Here, the ALJ's hypothetical mirrored the limitations provided in the RFC. (*Compare*

A.R. at 37 *with* A.R. at 66–67). As such, the discussion in *Moulden* provides little support for the relief sought by Hagans.

Hagans next offers that, because "reasonable support" is undefined, it is unclear whether the ALJ incorporated moderate adaptation limitations into her RFC. (R. 9 at Page ID 5893). In particular she contends that, because the "record supports the need for adaptation limitations" and the only limitation in the RFC to that affect is "reasonable support," the ALJ failed to build an accurate and logical bridge. (*Id.*). At Step Three, the ALJ provided this relevant discussion regarding Hagans's adaptation limitation:

> As for adapting or managing oneself, the claimant had experienced a moderate limitation. The claimant has alleged issues with depression and anxiety throughout her pre-hearing reports and hearing testimony. Medical records from the relevant period do reflect reports of both depression and anxiety, along with some recurrent mood findings on exam during the period. (*See* Exhibit 6F). However, her treatment for these issues effectively involved medical management visits only every two to three months and she remained stable with this relatively conservative course of care. (*Id.*). The record did not document any emergency room visits or hospital admissions for mental health symptoms at any point during the relevant period. The record also indicates the claimant continued to manage herself, with reports that she prepared simple meals on a regular basis, helped with laundry, drove, dusted, shopped for groceries using a motorized car, took care of a pet dog, managed her own finances, managed the two rental properties that she owned, and helped take care of other family members. (*See, e.g.*, January 2023 Testimony, Exhibits 7E; 9E; 11E; 5F, p 69-70, 197-201).

(A.R. at 36-37).

Although the ALJ was not required to include this adaptation limitation in Hagans's RFC, *see, e.g.*, *Travis T. v. Commissioner of Social Security*, No. 3:25-CV-138-RSE, 2025 WL 3281431, at *4 (W.D. Ky. Nov. 25, 2025) ("an ALJ's finding that a claimant has 'moderate' limitations in Paragraph B criteria as Step Three, does not necessarily correlate to an identical limitation in the RFC" (collecting cases)), he was required to consider it, *id.* The Court finds the ALJ did so.

The ALJ included an adaptation limitation in Hagan's mental RFC, namely, that she "can adapt to work demands and situational changes given reasonable support." (A.R. at 37). As

discussed in greater detail above, the ALJ also considered medical evidence, medical opinions, and non-medical evidence all relating to Hagans's mental health. (A.R. 41–43, 45–46). Moreover, to the extent, if any, the term "reasonable support" lacks clarity, the ALJ asked follow-up questions to clarify what exactly he intended to limit with respect to adaptation.

At Step Three, the ALJ found Hagans had a moderate adaptation limitation due to depression and anxiety. (*Id.* at 36–37). However, he clarified that her treatment for those conditions involved a medical appointment every two or three months. (*Id.*). After posing the hypothetical at the hearing, he asked the VE if the hypothetical individual—sharing all relevant traits with Hagans—would be precluded from work if she were off task twenty-five percent of the time and missed four days of work per week. (*Id.* at 70). The VE responded that no jobs would be available in the national economy given those restrictions but that said hypothetical individual could be off task up to ten percent of the time and miss work one day per month. (*Id.*). This means Hagans could treat the cause of her adaptation limitation more extensively than she already does and still find work in the national economy. Consequently, the ALJ discharged his obligation to consider Hagans's moderate adaptation limitation when he assessed her RFC. *Travis T.*, 2025 WL 3281431, at *4.

Hagans also argues that, because "reasonable support" was not defined by the ALJ, it is unclear whether the VE interpreted it in the manner the ALJ intended.[2] (R. 9 at Page ID 5894; R.

[2] In support of this position, Hagans relies on *Beulah v. Commissioner of Social Security*, No. 1:20-CV-2271, 2022 WL 1609236, at *27–31 (N.D. Ohio Mar. 25, 2022), *report and recommendation adopted*, 2022 WL 1606286 (N.D. Ohio May 20, 2022), primarily for the proposition that because the term "superficial" is not defined, it would have been improper for the ALJ to adopt the term without first defining it. (R. 9 at Page ID 5894; R. 14 at Page ID 5914). Her reliance is, however, misplaced. First, the *Beulah* court seems to stand against the weight of authority in its finding that "superficial" is not vocationally relevant. *See Swank v. Comm'r of Soc. Sec.*, No. 2:20-CV-2396, 2021 WL 1345420, at *5 (S.D. Ohio Apr. 12, 2021) (citing four cases that held "superficial" is a "well-recognized, work-related limitation"), *report and recommendation adopted*, 2021 WL 1909701 (S.D. Ohio May 12, 2021). Second, *Beulah* is distinct from the instant case because, unlike *Beulah*—where the claimant challenged the Commissioner's decision because the ALJ failed to include a term in the RFC—Hagans challenges the ALJ's inclusion of a term without first defining it.

14 at Page ID 5914). However, at least one court within this circuit has upheld a similar RFC as not vague or ambiguous where the ALJ had basis in the record and posed a valid hypothetical question to the VE. *Yingling v. Colvin*, No. 3:13-CV-41, 2014 WL 2803990, at *6 (M.D. Tenn. June 20, 2014) ("Because it is proper for the ALJ to include information from the record in the proffered hypothetical questions to the VE, and because the information included by the ALJ in the case at bar came directly from the record, the ALJ's questions were valid." (collecting cases)), *report and recommendation adopted*, 2014 WL 3697916 (M.D. Tenn. July 24, 2014). As discussed above, the RFC (*see* A.R. at 37, 45–46, 147, 173) and thus the hypothetical question (*see id.* at 66–67) had basis in the record, and the question posed to the VE was otherwise proper, *see Webb*, 368 F.3d at 633. Consequently, the undefined term "reasonable support" does not render the VE's testimony improper. *See Yingling*, 2014 WL 2803990, at *6.

To be sure, the ALJ is tasked with "control[ing] certain aspects of the" hearing, like "compel[ing the VE] to clarify a technical answer; prohibit[ing] her from respond[ing] to questions on medical matters or . . . draw[ing] conclusions not within [her] area of expertise; prohibit[ing] her from examining the claimant; and compel[ing] her to clarify any unstated assumptions." *Byers v. Saul*, No. 1:19-CV-2814, 2020 WL 7364233, at *8 (N.D. Ohio Nov. 24, 2020) (citing HALLEX I-2-6-74(C)), *report and recommendation adopted*, 2020 WL 7352663 (N.D. Ohio Dec. 14, 2020). Nevertheless, Hagans's obligation to investigate the accuracy of the VE's testimony arose at the hearing, where she "had the opportunity to cross-examine the VE . . . . The fact [her] counsel did not do so is not grounds for relief." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168–69 (6th Cir. 2009); *see also O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 318 (6th Cir. 2020) ("Because the [Dictionary of Occupational Titles] continues to be recognized as a source of reliable job information and [the claimant] did not cross-examine the vocational expert when [s]he had the

opportunity, the vocational expert's testimony constitutes substantial evidence."). Therefore, substantial evidence supports the ALJ's determination at Step Five that Hagans was able to perform work in the national economy.

## IV. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, **IT IS HEREBY ORDERED** that the Plaintiff's Brief (R. 9) is **OVERRULED,** and the Defendant's Brief (R. 13) is **SUSTAINED.** A Judgment in favor of the Defendant will be entered contemporaneously herewith.

Dated this 28th day of September, 2026.

**Signed By:**
***Candace J. Smith***
**United States Magistrate Judge**

G:\Judge-CJS\DATA\Orders\civil cov\2025\25-55-CJS SSA MOO.docx